IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| SCOTT RODNEY ROBINSON, JR. | § | |
| VS. | § | CIVIL ACTION NO. 1:21cv494 |
| UTMB, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Scott Rodney Robinson, Jr., an inmate currently confined at the Pack I Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, brings this lawsuit pursuant to 42 U.S.C. § 1983 against the University of Texas Medical Branch ("UTMB"), Bryan Williams, Lori Walker, Duyen Bui, Joe Lopez, Roshanda Poullard, Sergeant Fondu, Officer Glubber, and Caleb Taylor.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Discussion

Plaintiff claims he was denied adequate medical care, in violation of the Eighth Amendment, during the period from June 12, 2020 through June 17, 2020 while he was confined at the Stiles Unit. Plaintiff claims the defendants ignored an injury to his left knee which resulted in the development of Methicillin-Resistant Staphylococcus Aureus ("MRSA") and caused him to suffer a "permanent deabilitating (sic) injury." (ECF No. 22 at *6.) Plaintiff states he had an extended stay in the hospital with an intravenous antibiotic "to remove and controll (sic) the M.R.S.A. into remission." *Id.*

According to plaintiff, defendant Bryan Williams, the warden at the Stiles Unit, is responsible for maintaining a secure and operational facility and that all staff "both medical and security are run in a proper and expedient fashion." Plaintiff claims that when defendant Williams received his Step 1 grievance, instead of inquiring into the matter and personally investigating the

matter, Williams passed blame directly to medical personnel.  Plaintiff claims this was a direct dereliction of his duties as warden.

On June 12, 2020, a Friday, plaintiff claims defendant Joe Lopez, a lieutenant at the unit, came to his cell in E-pod, 12 Building.  Plaintiff claims that when defendant Lopez looked at his knee and he told defendant Lopez he could not walk or stand up by himself, Lopez called the medical department and followed the instructions given him by defendant Bui, a nurse at the unit.  Plaintiff claims this was a dereliction of his duties and caused a delay of medical attention until the following Monday.

Plaintiff complains that instead of having him brought to the medical department for an evaluation, defendant Bui told Lopez to have plaintiff fill out a sick call slip and plaintiff would be seen as soon as the nursing staff could respond to the sick call request.  Plaintiff claims this was a dereliction of duty when Bui was told by a security officer in charge "that even he could tell that something was severely amiss with [his] leg."

On June 13, 2020, a Saturday, plaintiff claims he could not walk in the hallway.  Upon seeing plaintiff, defendant Lori Walker, a nurse at the unit, asked him what was the problem.  Yet, when plaintiff told her his knee was the problem and attempted to pull up his pants leg to show her his knee, plaintiff alleges defendant Walker told him to stand up and that it was inappropriate for plaintiff to pull his pants leg up.  Plaintiff claims he told Walker he could not stand because he was in intolerable pain.  According to plaintiff, Walker told him to stand up or he would not be seen.  However, after protesting and asking to see another more qualified nurse or to be sent to the hospital, plaintiff states defendant Walker took his vital signs and examined his leg.  Plaintiff claims his knee was twice its normal size, but defendant Walker told him he would be fine and that she was giving him a referral to be reviewed on Monday.  Plaintiff claims Walker was derelict in her duties by failing to detect an infection and immediately contacting a doctor, instead she told him to return to his housing unit and did not offer anything to assist him with his "walking needs."

Also on June 13, 2020, plaintiff claims he asked to speak to a ranking supervisor for Building 12. Plaintiff asserts that defendants Poulard and Fondu were both sergeants assigned to Building 12, but neither defendant "chose to respond or claim any responsibilities towards the incident at hand." Plaintiff claims defendant Fondu was contacted by defendant Glubber and told that plaintiff needed medical care, but he failed to come and investigate or assess the situation.

Plaintiff claims defendant Glubber, a correctional officer, came to work intoxicated on June 13, 2020 and reported to E-pod. Plaintiff claims that when Glubber came by his cell plaintiff "explained the situation." Later, when defendant Glubber opened his cell to come out for shower, plaintiff claims he crawled out onto the run. Plaintiff alleges that Glubber asked him how he was going to shower if he could not walk. Plaintiff claims he told Glubber he was not worried about a shower, but he needed medical attention and he was not going to go back into his cell until he received some kind of medical attention. After defendant Glubber allegedly stated he was too inebriated to care and forty-five minutes of back and forth exchange, plaintiff claims Glubber attempted to call defendants Poulard and Fondu, but neglected his medical needs. Plaintiff claims that after Glubber made contact with both Poulard and Fondu neither defendant showed up to see him, but sent Officer Taylor instead.

Plaintiff claims defendant Caleb Taylor, a correctional officer, was derelict in his duties upon his arrival to E-pod, 12 Building. Plaintiff alleges that defendant Taylor saw him sitting on the floor and stated he was sent by defendant Poulard to take plaintiff to the medical department. Plaintiff claims he told defendant Taylor that Taylor needed to initiate an I.C.S.[1] because he could not walk. However, Taylor told him he was not going to initiate an I.C.S. and if plaintiff wanted medical attention he needed to get to the medical department. Plaintiff claims defendant Taylor watched him crawl over one hundred yards while escorting plaintiff to the medical facility without offering any assistance, and plaintiff claims Taylor was laughing at him the entire time.

---

[1] The court understands "I.C.S." to refer to an Incident Command System often used for additional officers to respond and regain control of a situation. *See Roberts v. Lozada*, No. 5:21cv170, 2022 WL 16839501 (N.D. Tex. June 3, 2022).

After arriving at the medical facility inside 12 Building, plaintiff claims he was treated inhumanely and did not receive proper medical care by defendant Walker, a nurse, but he claims defendant Taylor continued to laugh and told him there was nothing else he could do for plaintiff. Plaintiff claims Taylor could see there was a major problem and could have called his supervisor or initiated an I.C.S. to have plaintiff transferred to "the real medical department" in 10 Building where plaintiff claims there are other nurses and doctors who could have made a better assessment. Instead, plaintiff alleges that Taylor forced him to return to his cell or receive a disciplinary case.

Next, plaintiff claims that the UTMB medical director was derelict in his duties. Plaintiff alleges that the unprofessional acts of defendants Walker and Bui not immediately referring him to a doctor, as well as the medical director's failure to review their medical reports, ultimately resulted in his hospitalization and surgery to remove the infection that all his nurses claimed did not exist." (ECF No. 22 at *5-6.)

Plaintiff claims the defendants' actions were in violation of Personnel Directive ("P.D.") 22 and Correctional Managed Health Care Policies, as well as other Administrative Directives ("A.D.") and Board Policies ("B.P.").

## The Motion to Dismiss

Pending before the court is a motion to dismiss by defendants Lori Walker and Duyen Bui (ECF No. 40). The defendants assert that plaintiff's claims against them should be dismissed because plaintiff has failed to create a plausible inference the defendants acted with deliberate indifference to a serious medical need. Additionally, the defendants assert that plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. Further, the defendants assert that plaintiff has failed to overcome their entitlement to qualified immunity.

## Standard of Review

An *in forma pauperis* proceeding may be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) if it: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted or (3) seeks monetary relief from a defendant who is immune from such relief.

*Frivolous*

A complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

In addition to the legal basis of the complaint, Section 1915 empowers the court to pierce the veil of the complainant's factual allegations if they are clearly baseless. *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465 (5th Cir. 1992). A complaint lacks an arguable basis in fact if, after providing the Plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless*. Denton*, 504 U.S. at 32.

In *Denton v. Hernandez*, the Supreme Court "declined the invitation to reduce the clearly baseless inquiry to a monolithic standard." *Denton*, 504 U.S. at 33. Examples of complaints within the clearly baseless inquiry are those which describe fanciful, fantastic, or delusional scenarios. A complaint is factually frivolous if the facts alleged rise to the level of the irrational or wholly incredible. Pleaded facts which are merely improbable or strange, however, are not clearly baseless for Section 1915(d) purposes. *Id.*

*Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of Plaintiff's complaint. FED. R. CIV. P. 12(b)(1). The Rule allows a party to challenge the subject-matter jurisdiction of a district court based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting the existence of jurisdiction bears the burden of proof once a court's subject-matter jurisdiction is challenged. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

*Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint fails to state a claim upon which relief may be granted if the factual allegations are not sufficient to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate when the Plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570). Plaintiffs must state enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. 544, 570.

In considering whether to dismiss a complaint for failing to state a claim upon which relief may be granted, all factual allegations in the complaint must be taken as true and construed favorably to the Plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). However, conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Twombly,* 550 U.S. at 555.

*Qualified Immunity*

The doctrine of qualified immunity affords protection to officials against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v Creighton*, 483 U.S. 635, 638 (1987).

Federal courts have traditionally used a two-step test to determine whether defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). First, the court must consider whether "the

facts alleged show the officer's conduct violated a constitutional right." *Id.* Second, if a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Id.* "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *internal citations omitted).* "[A] state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). A plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. *See Saucier*, 533 U.S. at 206; *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). The Supreme Court held that the rigid structure of *Saucier* is no longer required and that the "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Analysis

*Elements of a Cause of Action under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 authorizes a suit in equity, or other proper proceeding for redressing violations of the Constitution and federal law by those acting under color of state law. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

*Eleventh Amendment Immunity*

The defendants contend that any claim against them in their official capacities are barred by the Eleventh Amendment.

Sovereign immunity prohibits "private suits against nonconsenting states in federal court." *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), *cert. denied*, 141 S.Ct. 1047 (2021). The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Lewis v. University of Texas Medical Branch at Galveston*, 665 F. 3d 625,630 (5th Cir. 2011) (UTMB is immune from suit); *Harris v. Angelina County, Texas*, 31 F.3d 331, 337 n.7 (5th Cir. 1994) (TDCJ is immune from suit). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from [state] officers in their official capacity." *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002). This immunity extends to lawsuits for injunctive relief as well as for monetary damages. *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 280-81 (5th Cir. 2002). Here, the Eleventh Amendment bars recovery regarding plaintiff's claims against the defendants in their official capacities. Therefore, the defendants' motion to dismiss should be granted.

*Medical Care*

Plaintiff complains that defendants Lori Walker and Duyen Bui violated the Eighth Amendment by acting with deliberate indifference to his serious medical needs. Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison

doctors or by prison guards in intentionally denying or delaying access to medical care. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id*; *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994). Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

   a.   Lori Walker

Plaintiff claims defendant Lori Walker, a nurse at the Stiles Unit, denied him adequate medical care and was derelict in her duties by failing to detect an infection in his knee and not immediately contacting a doctor. Instead, plaintiff claims she told him to return to his housing unit and did not offer anything to assist him with his walking needs.

On June 13, 2020, a Saturday, plaintiff claims he could not walk in the hallway. Upon seeing plaintiff, defendant Lori Walker, a nurse at the unit, asked him what was the problem. Yet, when

9

plaintiff told her his knee was the problem and attempted to pull up his pants leg to show her his knee, plaintiff alleges defendant Walker told him to stand up and that it was inappropriate for plaintiff to pull his pants leg up. Plaintiff claims he told Walker he could not stand because he was in intolerable pain. According to plaintiff, Walker told him to stand up or he would not be seen. However, after protesting and asking to see another more qualified nurse or to be sent to the hospital, plaintiff states defendant Walker took his vital signs and examined his leg. Plaintiff claims his knee was twice its normal size, but defendant Walker told him he would be fine and that she was giving him a referral to be reviewed on Monday.

Plaintiff also alleges in a conclusory fashion that defendant Walker "chose to let the injury continue to get worse instead of immediately contacting and M.D. to get an expert or second opinion or referral to the local emergency room." However, plaintiff provides no factual basis for such conclusory allegation. "[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books a Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002) (internal quotations omitted).

As set forth above, plaintiff admits defendant Walker saw him on Saturday, June 13, 2020, took his vital signs, examined his leg, and referred him to see a doctor the following Monday. Additionally, a review of the grievances attached to his complaint reveals that plaintiff was without fever and there was no indication for transfer. (ECF No. 1 at *10.) Further, plaintiff was given a pass for daily evaluations and he returned to the medical clinic the following day and remained without fever. *Id.* At most, Plaintiff's allegations constitute nothing more than negligence or a disagreement with medical professionals over the proper course of treatment. Negligence does not constitute a violation of the Eighth Amendment. Unsuccessful medical treatment, acts of negligence or medical malpractice, and disagreements as to diagnosis or treatment do not constitute deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Further, dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need

and does not rise to the level of the denial of a constitutional right. *Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Plaintiff has failed to show the defendant Walker was aware of a substantial risk of serious harm and failed to take measures to abate the risk. Plaintiff's allegations fail to rise to the egregious level required to state a claim under the Eighth Amendment. Further, plaintiff has failed to allege any harm suffered as the result of the defendant's actions. Accordingly, plaintiff's complaint fails to state a claim upon which relief may be granted against defendant Walker, and she is entitled to qualified immunity. Therefore, defendant Walker's motion to dismiss should be granted.

    b.    Duyen Bui

On June 12, 2020, a Friday, plaintiff claims that when defendant Lopez looked at his knee and he told defendant Lopez he could not walk or stand up by himself, Lopez called the medical department and followed the instructions given him by defendant Bui, a nurse at the unit. Plaintiff complains that instead of having him brought to the medical department for an evaluation, defendant Bui told Lopez to have plaintiff fill out a sick call slip and plaintiff would be seen as soon as the nursing staff could respond to the sick call request. Plaintiff claims this was a dereliction of duty when Bui was told by a security officer in charge "that even he could tell that something was severely amiss with [his] leg."

Plaintiff has failed to allege or demonstrate Bui was aware of a substantial risk of serious harm to plaintiff if he did not receive immediate medical care, or that Bui drew such an inference from the facts known to her. The defendant's conduct did not rise "to the level of egregious intentional conduct." *See Gobert*, 463 F.3d at 351. Accordingly, plaintiff's allegations fail to rise to the level of a constitutional violation, and defendant Bui is entitled to qualified immunity. For these reasons, defendant Bui's motion to dismiss should be granted.

*Violations of Prison Policy*

Finally, plaintiff claims the defendants' actions were in violation of Personnel Directive 22 and Correctional Managed Health Care Policies, as well as other Administrative Directives and

Board Policies. Plaintiff's claims, however, fail to state a claim upon which relief may be granted. The defendants' alleged failure to follow prison regulations, rules or procedures does not rise to the level of a constitutional violation. *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Accordingly, plaintiff's claims are without merit and the defendants' motion to dismiss should be granted.

## Recommendation

The defendants' motion to dismiss should be granted. Therefore, plaintiff's claims against defendants Lori Walker and Duyen Bui should be dismissed.

## Objections

Within fourteen days after being served with a copy of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 5th day of March, 2024.

_____
Zack Hawthorn
United States Magistrate Judge